ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MUÑEKI I APARTMENTS Y OTROS<br><br>Apelada<br><br><br>v.<br><br><br>TRIPLE-S PROPIEDAD, INC.<br><br>Apelante | KLAN202400198 | ***Apelación*** procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla<br><br>Civil Núm.: AG2019CV01234<br><br>Sobre:<br><br>Incumplimiento de Contrato de Seguros y Daños y Perjuicios |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez

Rivera Pérez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 22 de abril de 2024.

Comparece ante nos Triple-S Propiedad, Inc. (en adelante, parte apelante o Triple-S) y nos solicita la revisión de una *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (en adelante, TPI o foro primario) el 8 de enero de 2024 y notificada al día siguiente.[1] Mediante dicho dictamen, el TPI declaró Ha Lugar la *Moción de Sentencia Sumaria Parcial* presentada el 3 de enero de 2023 por Muñeki I Apartaments, Muñeki Associates, S.E., Albors Property Corp., Attenure Holdings Trust 11, y HRH Property Holdings LLC (en adelante, parte apelada) y, en consecuencia, ordenó a Triple-S al pago de $15,553.55 a favor de la parte apelada.

Por los fundamentos que expondremos, se confirma la *Sentencia Parcial* apelada.

---

[1] Anejos del escrito de *Apelación* a las págs. 957-967.

Número Identificador

SEN2024 _____

**-I-**

El 5 de septiembre de 2019, Muñeki I Apartments (en adelante, Muñeki I), Muñeki Associates, S.E., Albors Property Corp., Attenure Holdings Trust 11, y HRH Property Holdings LLC presentaron una *Demanda* sobre incumplimiento de contrato de seguros y daños y perjuicios en contra de Triple-S.[2] Así las cosas, el 19 de septiembre de 2019, la parte apelada presentó una *Demanda Enmendada*, en la cual alegaron que instaron su reclamación para, entre otros remedios, cobrar la indemnización del seguro por las pérdidas causadas por el Huracán María que, pese a estar cubiertas por la póliza de seguro, Triple-S se rehusó a pagar en contravención a los términos de la póliza y a las disposiciones aplicables al manejo de las reclamaciones de seguro en Puerto Rico.[3] En específico, la parte apelada reclamó pérdidas por una cuantía estimada en $4,636,738.86. Además, reclamó que cuando sometió su reclamación a Triple-S para que le extendiera la cubierta de la póliza número 30-CP-81087372-1 que había comprado, la aseguradora incumplió con sus deberes bajo la póliza de seguro, violó las disposiciones del *"Código de Seguros de Puerto Rico"*, *infra*, que rigen el ajuste de las reclamaciones de seguro, y se negó a reconocer el alcance y el valor de los daños sufridos por la propiedad Muñeki I. Attenure Holding Trust 11 les ofreció ayuda económica a los asegurados, en este caso a Muñeki I, para reparar los daños que el Huracán María había causado a sus propiedades y asumió la responsabilidad de llevar las reclamaciones en contra de las aseguradoras incluso en litigio ante los tribunales.

El 28 de septiembre de 2021, Triple-S presentó su *Contestación a Demanda Enmendada.*[4] Mediante esta negó las alegaciones en su contra y presentó sus defensas afirmativas. En su

---

[2] Véase la entrada Núm. 1 del expediente digital del Caso Núm. AG2019CV01234 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[3] Anejos del escrito de *Apelación*, a las págs. 1-17.
[4] Anejos del escrito de *Apelación*, a las págs. 18-47.

escrito, Triple-S alegó que no responde automáticamente por los daños reclamados por la parte apelada y que dicha parte está obligada a cooperar en la investigación de la reclamación y de presentar documentación de soporte en cuanto a los daños reclamados. También, Triple-S, arguyó que todos los daños reclamados no están cubiertos por la póliza, ni que hubiesen sido ocasionados por el Huracán María. Además, alegaron que los estimados sometidos por la parte apelada incluyen pérdidas sobrevaloradas, exageradas, especulativas, infundadas, preexistentes, e inexistentes. Por último, Triple-S sostuvo que había sido diligente en el manejo de la reclamación presentada y que había cumplido cabalmente con las disposiciones del *"Código de Seguros de Puerto Rico", infra.*

Luego de varios incidentes procesales y varios recursos apelativos, que no son necesarios reseñar, el 28 de noviembre de 2022, Triple-S le notificó a Muñeki I un ajuste del *Informe Pericial* de sus peritos, en el cual concluyó que los daños cubiertos bajo la póliza ascendían a $15,553.55, luego de aplicar los deducibles, términos, exclusiones y limitaciones al amparo de la póliza.[5]

Así las cosas, el 3 de enero de 2023, la parte apelada presentó una *Moción de Sentencia Sumaria Parcial,* solicitando el desembolso de la cantidad de daños notificada en el ajuste.[6] En síntesis, alegó la parte apelada que, de conformidad a lo resuelto en el caso de *Carpets & Rugs v. Tropical Reps,* 175 DPR 615 (2009), lo que procedía era ordenar a la aseguradora el pago inmediato de la cuantía de $15,553.55 sobre la cual no había controversia y era la cantidad mínima para pagar. Además, arguyeron que el ajuste preparado por el ajustador contratado por Triple-S era considerado como el ajuste de la reclamación de seguro y, por ende, un

---

[5] Anejos del escrito de *Apelación,* a las págs. 411-433.
[6] Anejos del escrito de *Apelación,* a las págs. 48-69.

reconocimiento de deuda en cuanto a las sumas ofrecidas como ajuste, según lo resuelto en el caso de *Feliciano Aguayo v. MAPFRE,* 207 DPR 138 (2021).

Luego de la presentación de varias mociones para suplementar la solicitud de sentencia sumaria parcial, el 23 de enero de 2023, Triple-S presentó su *Oposición a Moción Solicitando Sentencia Sumaria Parcial.*[7] Triple-S argumentó que el caso de *Carpets & Rugs v. Tropical Reps,* supra, en el cual fundamentaba la parte apelada su solicitud de sentencia sumaria parcial, era distinguible de la situación fáctica del caso de autos, pues la aseguradora levantó las defensas de fraude y sobrevaloración. Además, argumentó que el caso de *Carpets & Rugs v. Tropical Reps,* supra, no resolvía que la notificación de un ajuste fuera un reconocimiento de deuda que hacía de la oferta una líquida y exigible, con el efecto de requerir el pago inmediato de dicha cuantía. Triple-S arguyó que el caso de *Feliciano Aguayo v. MAPFRE,* supra, era distinguible pues no se estaba solicitando un adelanto o pago parcial. Por último, argumentó que se requería que las partes estuvieran de acuerdo con el monto de la pérdida para que procediera el pago de la reclamación.

El 8 de enero de 2024, el foro primario dictó la *Sentencia Parcial,* notificada al día siguiente.[8] En su dictamen, el TPI formuló las determinaciones de hechos siguientes:

> **"HECHOS ESENCIALES Y PERTINENTES SOBRE LOS CUALES NO HAY CONTROVERSIA SUSTANCIAL:**
>
> 1. Almonet Aguadilla, LLC y Albors Property Corp., tenían una póliza de seguro suscrita con Triple-S, núm. 30-CP-81087372-1.
>
> 2. La póliza núm. 30-CP-81087372-1 estuvo vigente durante el paso del huracán María por Puerto Rico, el 20 de septiembre de 2017. En específico, estuvo vigente desde el 21 de abril de 2017 hasta el 21 de abril de 2018.

---

[7] Anejos del escrito de *Apelación,* a las págs. 863-887.
[8] Anejos del escrito de *Apelación* a las págs. 957-967.

3. La propiedad asegurada es un complejo de apartamentos de alquiler que opera bajo el programa Sección 8. Muñeki I Apartments está localizado en la Carr. 459, Bo. Corrales, Km. 0.2, Aguadilla, Puerto Rico, 00603.

4. El 31 de octubre de 2017, Muñeki I sometió reclamaciones a Triple-S solicitando cubierta bajo la póliza.

5. Muñeki I presentó a Triple-S estimados de los daños ocasionados en la propiedad.

6. La propiedad asegurada fue inspeccionada por Triple-S del 31 de enero al 4 de febrero de 2022.

7. El 28 de noviembre de 2022, Triple-S notificó por correo electrónico una misiva en la cual se incluyó un pre-ajuste realizado por Rafael Betancourt, el 20 de noviembre de 2022.

8. En la referida misiva, se dispuso lo siguiente:

Triple-S Propiedad (TSP) clarifies and asserts that it has not finalized its investigation or adjustment of the instant claim. TSP is still actively investigating the claim, claim submission, estimates submitted and conducting discovery in the litigation, which is still ongoing. As such, TSP is not in a position to issue its adjustment and/or institutional position with regard to the claim and estimates submitted by the Insured. TSP is hereby notifying a preliminary and interim pre adjustment only for purposes of discussion and settlement negotiations. Therefore, TSP is not offering to make any payment to the Insured, because no payment is proper at this juncture. Again, the enclosed pre-adjustment does not constitute, and cannot and should not be interpreted as, TSP's final and formal adjustment nor its official position as to the referenced claim. That being said, enclosed you will find TSP's pre-adjustment of Haag's Construction Consulting Co., (HAAG) Expert Report in connection with the referenced claim, which shows that any covered damages are under the deductible.

9. La misiva de Triple-S firmada por el señor Luis R. Román Negrón también disponía que, el pre-ajuste preparado por Haag's Construction Consulting Co., mostraba que los daños cubiertos se encontraban bajo el deducible.

10. No obstante, lo anterior, HAAG Construction Consulting Co., estimó en el informe de ajuste preparado que los daños sufridos por la propiedad asegurada ascendían a $15,553.55, luego de aplicados los deducibles.

11. La aseguradora no ha efectuado pago parcial a favor de la parte demandante.

**HECHOS ESENCIALES Y PERTINENTES QUE ESTÁN REALMENTE Y DE BUENA FE CONTROVERTIDOS:**

1. La póliza de seguro define el término causa de pérdida cubierta ("Covered Causes of Loss") como cualquier pérdida física directa, excepto que la pérdida esté excluida o limitada por la póliza ("direct physical loss unless the loss is excluded or limited in this policy").

2. No hay exclusión o limitación en la póliza específica para daños ocasionados por un huracán o por vientos y agua asociados a un huracán.

3. El 15 de febrero de 2021, el perito de la parte demandante estimó que los daños ascienden a $1,399,293.23, sujeto a los deducibles aplicables."

A base de estas determinaciones, el TPI concluyó y resolvió en su *Sentencia Parcial* lo siguiente:

"[...]

El referido informe, así como la presentación del perito de la parte demandada, fue excluida para propósitos del juicio por razón de que la parte demandada no cumplió con el descubrimiento de prueba dentro del término provisto para ello. Sin embargo, esta prueba no fue excluida para otros propósitos. Segundo, determinamos que **la suma reclamada por la parte demandante se compone de una parte líquida, correspondiente al ajuste u oferta de la aseguradora, y otra ilíquida, sobre la cual existe controversia**.

El estimado de daños que Triple-S envió a la parte demandante incluyó el ajuste correspondiente a la propiedad asegurada, según la información que la aseguradora tenía hasta ese momento. **El informe de ajuste o estimado de daños fue por la cantidad de $15,553.55. Por consiguiente, esa suma es una cuantía de dinero cierta y determinada que no está sujeta a alguna causa de nulidad y representa la parte líquida de la reclamación.** Contrario a lo que pretende la parte demandada, el proceso de ajuste y de manejo de la reclamación no puede eludirse con cartas sobre reservas de derecho y/o "pre-[ajustes]". Como adelantamos previamente, corresponde a la aseguradora cumplir con las disposiciones del Código de Seguros al investigar y hacer el informe de ajuste o estimado de daños de la reclamación dentro del término provisto para esto. Por lo cual, la parte demandada se ve impedida de impugnar u ofrecer una cantidad menor a la que reconoció en el estimado de los daños que notificó, dado que fue esta misma quien concluyó que esa era la cantidad a la cual tenía derecho la parte demandante.

Por otro lado, el informe de ajuste o estimado de daños es equivalente a una oferta de transacción o postura de negociación. *Carpets & Rugs v. Tropical Reps, supra*, pág. 635. En consecuencia, la parte demandada tampoco puede ahora denegar partidas que

en su informe de ajuste o estimado de daños consideró procedentes. *Carpets & Rugs v. Tropical Reps, supra*, pág. 636. En nuestro ordenamiento, no es permisible que un asegurador, ante un reclamo judicial de su asegurado, deniegue partidas que en su ajuste inicial entendió procedentes, en ausencia de fraude u otras circunstancias extraordinarias que lo ameriten. *Carpets & Rugs v. Tropical Reps, supra*, pág. 636. Por consiguiente, el estimado de daños se considera parte de la obligación de Triple-S de resolver finalmente la reclamación de la parte demandante. Véase, *Carpets & Rugs v. Tropical Reps, supra,* pág. 639.

En atención a los fundamentos antes consignados, se declara HA LUGAR la moción de sentencia sumaria parcial presentada por la parte demandante, el 3 de enero de 2023. Se ordena a la parte demandada a satisfacer a favor de la parte demandante la suma de $15,553.55." (Énfasis suplido.)

Inconforme Triple-S con el dictamen, el 24 de enero de 2024 presentó *Moción de Reconsideración de "Sentencia Sumaria Parcial" (SUMAC NÚM. 132)*.[9] El 13 de febrero de 2024, la parte apelada presentó *Oposición a Moción de Reconsideración de "Sentencia Sumaria Parcial" (SUMAC NÚM. 132)*.[10] El foro primario el 14 de febrero de 2024 declaró No Ha Lugar la moción en solicitud de reconsideración presentada por Triple-S.

Aun insatisfecho, Triple-S acudió ante nos el 1 de marzo de 2024 mediante recurso de *Apelación* y nos planteó la comisión de los siguientes errores:

**PRIMER ERROR:**

Erró el TPI al ordenar el pago parcial del ajuste, a pesar de que no se verifica ninguna de las instancias permitidas por la Ley 243-2018 para que proceda este tipo de pago o adelanto. Tampoco procede bajo los términos claros de la póliza.

**SEGUNDO ERROR:**

Erró el TPI al concluir que la cantidad notificada en el ajuste, la cual no fue acogida por la parte asegurada, es una deuda líquida y exigible que debe pagarse inmediatamente.

**TERCER ERROR:**

Erró el TPI en su interpretación del caso de *Carpets & Rugs v. Tropical Reps [sic.],* 175 DPR 615, 635 (2009).

---

[9] Anejos del escrito de *Apelación*, a las págs. 968-975.
[10] Anejos del escrito de *Apelación*, a las págs. 976-986.

**CUARTO ERROR:**

Erró el TPI al conceder la Moción de Sentencia Sumaria presentada por Muñeki, a[u]n cuando esta no cumple con la Regla 36.3(A)(3) de Procedimiento Civil[,] 32 LPRA Ap. V[,] R. 36.3(A)(3), ni con la Regla 42.3 de Procedimiento Civil, 32 LPRA Ap. V[,] R. 42.3.

El 26 de marzo de 2024, la parte apelada presentó *Alegato de la Parte Apelada*.

Analizados los escritos de las partes, así como el expediente apelativo, y evaluado el derecho aplicable, procedemos a resolver.

**II.**

**A.**

La Regla 36 de Procedimiento Civil, 32 LPRA Ap. V., R. 36, regula todo lo relacionado a la moción de sentencia sumaria. Dicho mecanismo procesal es utilizado en aquellos litigios que no presentan controversias genuinas de hechos materiales y que, por consiguiente, la celebración de un juicio en su fondo no es necesaria en la medida que solo resta por dirimir determinadas controversias de derecho. *Acevedo y otros v. Depto. Hacienda y otros*, 2023 TSPR 80, 212 DPR ___ (2023); *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 334 (2021); *León Torres v. Rivera Lebrón*, 204 DPR 20, 41 (2020); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018).

El propósito que se persigue con el mecanismo de la sentencia sumaria es que los pleitos civiles sean solucionados de forma justa, rápida y económica. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 335; *León Torres v. Rivera Lebrón*, supra, pág. 43. Para ello, la Regla 36.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, establece cual será el contenido y los requisitos de forma que deberán observarse tanto en la solicitud de sentencia sumaria que inste la parte promovente, como en la oposición que pueda presentar la parte promovida. Véase, también, *León Torres v. Rivera Lebrón*, supra, pág. 43. Al respecto, la Regla 36.3 (e) de Procedimiento Civil,

*supra*, establece que la sentencia sumaria solicitada será dictada inmediatamente:

> "si de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que como cuestión de derecho el tribunal debe dictar sentencia sumaria a favor de la parte promovente." Véase, además, *Rodríguez García v. UCA*, supra; *Roldán Flores v. M. Cuebas [et al.,* 199 DPR 664 (2018)].

Como regla general, una moción de sentencia sumaria no procederá cuando: (1) existan hechos materiales y esenciales controvertidos; (2) haya alegaciones afirmativas en la demanda que no han sido refutadas; (3) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial; o (4) como cuestión de derecho, no proceda. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, págs. 335-336; *S.L.G. Szendrey-Ramos v. Consejo Titulares*, 184 DPR 133, 167 (2011). De igual forma, es también norma reiterada que el mecanismo de sentencia sumaria no es el adecuado cuando existen controversias de hechos materiales sobre elementos subjetivos de intención, propósitos mentales o negligencia. *Velázquez Ortiz v. Mun. De Humacao*, 197 DPR 656 (2017); *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 129 (2012); *Ramos Pérez v. Univisión*, 178 DPR 200, 219 (2010).

La Regla 36.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.4, regula que ocurre cuando no se dicta una sentencia sumaria en su totalidad. Esta Regla dispone lo siguiente:

> "Si en virtud de una moción presentada bajo las disposiciones de esta regla no se dicta sentencia sobre la totalidad del pleito, no se concede todo el remedio solicitado o se deniega la moción, y es necesario celebrar juicio, será obligatorio que el tribunal resuelva la moción mediante una determinación de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial y los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, y hasta qué extremo la cuantía de los daños u otra reparación no está en controversia, ordenando los procedimientos ulteriores que sean

justos en el pleito, incluso una vista evidenciaria limitada a los asuntos en controversia. Al celebrarse el juicio, se considerarán probados los hechos así especificados y se procederá de conformidad.

A base de las determinaciones realizadas en virtud de esta regla, el tribunal dictará los correspondientes remedios, si alguno". Regla 36.4 de Procedimiento Civil, *supra.*

Es importante puntualizar que, al momento de atender una solicitud de revisión de sentencia sumaria, los foros apelativos estamos llamados a "examinar el expediente *de novo* y verificar que las partes cumplieron con las exigencias" pautadas en las Reglas de Procedimiento Civil. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra, pág. 338 citando a *Rivera Matos et al. v. Triple-S et al.*, 204 DPR 1010, 1025 (2020). En ese proceder, y de encontrar que los hechos materiales realmente están incontrovertidos, nos corresponde entonces revisar si el foro primario aplicó correctamente el Derecho. *SLG Fernández-Bernal v. RAD-MAN et al.*, supra; *González Santiago v. Baxter Healthcare*, 202 DPR 281, 291 (2019).

**B.**

En nuestra jurisdicción, los contratos de seguro han sido revestidos de un alto interés público por su importancia, complejidad, y efecto en la economía y la sociedad, razón por la cual esta industria se encuentra extensamente reglamentada mediante su cuerpo rector, la Ley Núm. 77 de 19 de junio de 1957, según enmendada, conocida como *Código de Seguros de Puerto Rico*, 26 LPRA sec. 101 *et seq.*, (en adelante, Código de Seguros). Véase, *Consejo Titulares v. Mapfre*, 208 DPR 716 (2022); *Maderas Tratadas v. Sun Alliance, et al.*, 185 DPR 880, 896 (2012). En materia de seguros las disposiciones del Código Civil de Puerto Rico tienen una función supletoria, por tratarse de una materia reglamentada por una ley especial. *San Luis Center Apts. et al. v. Triple-S*, 208 DPR 824, 834 (2022).

El Artículo 1.020 del Código de Seguros, *supra*, define el seguro como "el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". En este tipo de contrato el asegurador asume determinados riesgos a cambio del cobro de una prima o cuota, en virtud de la cual se obliga a responder por la carga económica que recaiga sobre el asegurado, en el caso de que ocurra algún evento especificado en el contrato. *Feliciano Aguayo v. MAPFRE,* supra, págs. 148-149; *ECP Incorporated v. OCS*, 205 DPR 268 (2020); *Savary et al. v. Mun. Fajardo et al.*, 198 DPR 1014, 1023 (2017); *S.L.G. Francis-Acevedo v. SIMED*, 176 DPR 372, 384 (2009). Así, vemos que el contrato de seguro tiene el propósito de indemnizar y proteger al asegurado en caso de producirse el suceso incierto previsto. *Íd.*, pág. 149.

En cuanto a los métodos para resolver una reclamación, el Artículo 21.163 del Código de Seguros, *supra*, dispone lo siguiente:

> "Los siguientes actos constituyen resolver una reclamación:
>
> (1) El pago total de la reclamación.
>
> (2) La denegación escrita y debidamente fundamentada de la reclamación.
>
> (3) El cierre de la reclamación por inactividad del reclamante, cuando el reclamante no coopere o no entregue la información necesaria para que el asegurador pueda ajustar la reclamación. [...]".

Existen otros métodos para resolver una reclamación, como lo es a través de la notificación de una oferta razonable. Véase, Carta Normativa Núm.: N-I-4-52-2004 emitida por el Comisionado de Seguros el 26 de abril de 2004; *Carpets & Rugs v. Tropical Reps*, supra. Al respecto, en *Carpets & Rugs v. Tropical Reps,* supra, pág. 635-636, el Tribunal Supremo explicó lo siguiente:

> "Cuando el asegurador escoge cumplir con su obligación mediante el envío de una oferta razonable al asegurado, dicha oferta constituye el estimado del asegurador de los daños sufridos por su asegurado. Al emitir dicho documento, el asegurador está informando

que después de una investigación diligente, un análisis de los hechos que dieron lugar a la pérdida, un examen de la póliza y sus exclusiones y un estudio realizado por el ajustador de reclamaciones del asegurador, se concluye que la póliza cubre ciertos daños reclamados por el asegurado, en las cantidades incluidas en la comunicación. Después de todo, al analizar una reclamación, los aseguradores tienen una obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe. Véase art. 27.161 (6) del Código de Seguros, 26 L.P.R.A. sec. 2716a.

Siendo este documento emitido por el asegurador el producto de una investigación adecuada y un análisis detenido, éste constituye la postura institucional del asegurador frente a la reclamación de su asegurado. En dicho documento no existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta bajo la póliza.

Es por esto que a un asegurador no le es permisible retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente. De permitirse que un asegurador se retracte de la comunicación que le obliga a emitir el Código de Seguros, se circunvalaría el término máximo en el cual un asegurador está obligado a investigar y resolver una reclamación, pues significaría que la resolución no sería final. Dicha práctica causaría incertidumbre en los asegurados, pues el asegurador podría cumplir artificiosamente con el término que le impone el Código de Seguros para evitar sanciones por parte del Comisionado y luego desdecirse de los daños estimados originalmente, obligando al litigio de partidas que encontró procedentes inicialmente." Véase, además, *Feliciano Aguayo v. MAPFRE Panamerican Ins. Co.*, supra, pág. 181.

En cuanto a los pagos parciales o en adelantos de la reclamación ante un evento catastrófico, el Artículo 27.166 del Código de Seguros, *supra*, dispone lo siguiente:

"Ante un estado de emergencia decretado por el Gobernador de Puerto Rico, la Oficina del Comisionado de Seguros estará facultada para ordenar a los aseguradores de seguros de propiedad a emitir pagos parciales o en adelantos al asegurado o reclamante, en cuanto a una o más partidas de las cuales no exista controversia, sin necesidad de esperar a la resolución final de la totalidad de la reclamación. En esos casos, los aseguradores cumplirán con los siguientes requisitos:

(a) Cuando entre el asegurado o reclamante y asegurador no exista controversia sobre una o más partidas de la reclamación para las cuales el asegurado

haya provisto al asegurador la documentación requerida en la póliza, el asegurador vendrá obligado a emitir el pago correspondiente a la partida o las partidas de la reclamación en que no exista controversia, independientemente de las otras partidas de la reclamación en que exista controversia. El pago deberá ser efectuado no más tarde de diez (10) días calendario, a partir de la fecha que el asegurado o reclamante haya notificado al asegurador, por escrito, sobre la aceptación de la oferta de pago parcial o en adelanto. El pago será por la cantidad neta, luego del descuento aplicable por concepto de deducible o coaseguro estipulado en la póliza de dichas partidas.

(b) En toda oferta de pago parcial o en adelanto de la reclamación, el asegurador identificará de manera clara y conspicua que la oferta es un "Pago Parcial o En Adelanto de la Reclamación", incluyendo un informe por escrito que identifique la cubierta(s) para lo cual se hace la oferta y un desglose de la cuantía correspondiente a cada una de las partidas objeto de la oferta.

(c) Cualquier oferta de pago de una reclamación en la cual no se identifique la cubierta bajo la cual se realiza, o deje de desglosar las partidas y cuantía de daños o pérdidas a la cual corresponde, incluyendo la cantidad aplicable por concepto de deducible o coaseguro estipulado en la póliza, se considerará una práctica desleal en el ajuste de reclamación, sujeto a las penalidades del Artículo 27.260 de este Código.

(d) La aceptación de un pago parcial o en adelanto por el asegurado reclamante no constituirá, ni podrá ser interpretado, como un pago en finiquito o renuncia a cualquier derecho o defensa que éste pueda tener sobre los otros asuntos de la reclamación en controversia que no estén contenidos expresamente en la declaración de oferta de pago parcial o en adelanto.

(e) El pago parcial o en adelanto no constituirá una resolución final de la totalidad de la reclamación con arreglo a los Artículos 27.162 y 27.163 de este Código."

El citado Artículo 27.166 del Código de Seguros, *supra*, fue incorporado mediante la Ley Núm. 243-2018 aprobada como consecuencia del paso del Huracán María para manejar las reclamaciones pendientes y ordenar a los aseguradores de la propiedad a "emitir pagos parciales o en adelantos al asegurado o reclamante luego de un evento catastrófico de las partidas que no estén en controversia y para otros asuntos relacionados". *Feliciano Aguayo v. MAPFRE*, supra, pág. 155, citando la Exposición de Motivos de la Ley Núm. 243-2018. Lo anterior, con el propósito de "estimular pagos a los asegurados o reclamantes afectados para que

puedan comenzar los arreglos para la reconstrucción o reparación de sus residencias y para iniciar la operación de los comercios, ayudando así a reactivar nuestra economía con mayor prontitud." *Íd.* Véase, además, Artículo 7 del Reglamento Núm. 2080 de la Oficina del Comisionado de Seguros del 6 de abril de 1976.

Tal principio también estaba estatuido en el Artículo 1123 del derogado Código Civil de 1930, 31 LPRA ant. sec. 3173, que, en lo pertinente, disponía que un acreedor no podía ser obligado —a menos que el contrato expresamente lo autorizara— a recibir las prestaciones de la obligación de forma parcial. *Feliciano Aguayo v. MAPFRE,* supra, págs. 155-156. Ahora bien, según lo establecía igual disposición, "cuando la deuda tuviere una parte líquida y otra ilíquida, podrá exigir el acreedor, y el deudor puede hacer el pago de la primera, sin esperar a que se liquide la segunda".[11]

### III.

En su recurso de *Apelación,* la parte aquí apelante arguye que erró el TPI al ordenar el pago parcial del ajuste, a pesar de no existir ninguna de las instancias permitidas por la Ley Núm. 243-2018, *supra,* para que proceda este tipo de pago o adelanto, ni bajo los términos claros de la póliza. También, argumenta Triple-S que erró el TPI al concluir que la cantidad notificada en el ajuste, la cual no fue acogida por la parte asegurada, era una deuda líquida y exigible que debía pagarse inmediatamente. Además, alega la parte apelante que incidió el foro primario en su interpretación del caso de *Carpets & Rugs v. Tropical Reps,* supra. Por último, argumenta Triple-S que erró el TPI al conceder la *Moción de Sentencia Sumaria Parcial* presentada por Muñeki I, aun cuando esta no cumple con la Regla

---

[11] Véase, además, Artículo 1119 del Código Civil de 2020, 31 LPRA sec. 9143:
"El acreedor no puede ser compelido a recibir parcialmente las prestaciones en las que consiste la obligación, salvo cuando el contrato o la ley expresamente lo autorizan.

Sin embargo, si la deuda tiene una parte líquida y otra ilíquida, el acreedor puede exigir, y el deudor puede hacer el pago de la primera, sin esperar a que se liquide la segunda".

36.3(A)(3) de Procedimiento Civil, *supra,* ni con la Regla 42.3 de Procedimiento Civil, *supra.* No le asiste la razón.

Por estar íntimamente relacionados los cuatro señalamientos de error procederemos a discutirlos en conjunto.

En primer lugar, examinada *de novo* la moción de sentencia sumaria parcial presentada por la parte apelada, así como la moción en oposición presentada por Triple-S, concluimos que las determinaciones de hechos formuladas por el TPI en el dictamen apelado encuentran apoyo en la prueba que obra en el expediente, por lo que las acogemos por referencia y las hacemos formar parte de nuestro dictamen.

En el presente caso, según reseñamos, Triple-S le notificó a la parte apelada un ajuste del estimado de los daños de su perito por la cantidad de $15,553.55, en el cual se concluyó que la póliza de seguro en cuestión cubría ciertos daños reclamados por el asegurado, en las cantidades según incluidas. El ajuste notificado por Triple-S identificaba las partidas incluidas en la póliza, así como el límite asegurado, y la cantidad que estaba dispuesta a pagar.

Ante el reconocimiento de Triple-S sobre la cubierta de los daños identificados en el ajuste notificado a la parte apelada, entendemos que procedía el pago como adelanto de la reclamación. Por lo tanto, resolvemos que no erró el TPI al ordenar a Triple-S a efectuar el pago de aquellas partidas que en el ajuste notificado entendió que procedían.

De conformidad al derecho expuesto, al analizar una reclamación, los aseguradores tienen una obligación de llevar a cabo un ajuste rápido, justo, equitativo y de buena fe. *Carpets & Rugs v. Tropical Reps*, supra. Siendo este documento emitido por el asegurador el producto de una investigación adecuada y un análisis detenido, este constituye la postura institucional del asegurador frente a la reclamación de su asegurado. *Íd.* En dicho documento no

existen concesiones del asegurador hacia su asegurado, pues se trata de un informe objetivo del asegurador en cuanto a la procedencia de la reclamación y la existencia de cubierta bajo la póliza. *Íd.* A un asegurador no le es permisible retractarse del ajuste que como obligación envía a su asegurado, salvo fraude de parte del reclamante u otras circunstancias extraordinarias que al asegurador le era imposible descubrir a pesar de una investigación diligente. *Íd.* Tampoco puede condicionar el pago a la falta de aceptación por parte del asegurado. *Íd.*

En el presente caso, una vez Triple-S reconoció la existencia de los daños cubiertos por la póliza y notificó el ajuste correspondiente, los $15,553.55 se convirtieron en una deuda líquida y exigible. Es importante aclarar que, aunque en el documento remitido Triple-S indicó que se trataba de un "pre-ajuste" e invocó reservas de derecho, en efecto el mismo constituyó un ajuste al palio del derecho aplicable. El pretender lo contrario sería un subterfugio para preterir la responsabilidad impuesta a la aseguradora en virtud de la póliza, el derecho aplicable, y lo resuelto en el caso de *Carpets & Rugs v. Tropical Reps*, supra. Lo anterior es cónsono con la rapidez, equidad y buena fe exigida a las aseguradoras en la resolución de las reclamaciones. A su vez, la decisión del foro primario es compatible con el Artículo 7(d) del Reglamento Núm. 2080 del Código de Seguros, *supra*, que permite hacer el pago, independientemente de que exista una controversia en cuanto a otros aspectos de la reclamación.

En ese sentido, razonamos que nada impedía a Triple-S realizar el pago parcial por los daños reclamados, cuando luego de la investigación correspondiente determinó que procedían los mismos bajo la cubierta de la póliza. Además, lo aquí resuelto no supone la renuncia de las partes a continuar ventilando las demás

alegaciones y defensas que están pendiente de adjudicación ante el foro primario.

Por todo lo anterior, concluimos que no erró el TPI al ordenarle a Triple-S a emitir el pago por $15,553.55 en concepto de pago parcial. Dicho pago procede en derecho, sin que ello constituya una resolución final de la totalidad de la reclamación.

**IV.**

Por los fundamentos expuestos, se confirma la *Sentencia Parcial* apelada.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones